[Cite as *State v. Lowell*, 2021-Ohio-3098.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                               :

    Plaintiff-Appellee,              :

                             Nos. 109684 and 109685

    v.                                             :

MEREDITH LOWELL,                       :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** September 9, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-636481-A and CR-19-646191-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Sarah J. Denney, Assistant Prosecuting
Attorney, *for appellee.*

Weston Hurd, L.L.P., Shawn W. Maestle, Walter A. Lucas,
and Scott W. Lucas, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Meredith Lowell ("Lowell") appeals from the decision of the Cuyahoga County Common Pleas Court that imposed consecutive terms of civil commitment after findings of not guilty by reason of insanity for two

incidents that occurred one year apart.  For the following reasons, we reverse that decision.

**Factual and Procedural History**

**November 28, 2018 Incident**

{¶ 2} On November 28, 2018, Lowell was shopping in a supermarket in University Heights, with her mother, when she encountered A.I., who was wearing a jacket with fur trim around the hood.  Lowell, who was carrying a Swiss army knife, attacked A.I., stabbing her in the back and ripping a hole in A.I.'s jacket.  A.I. was not physically injured as a result of the attack.  A store clerk, who saw the incident, wrestled Lowell to the ground and took the knife from her.  The police were called and took Lowell into custody.  Mother informed the police that Lowell had severe autism and becomes upset when she sees someone wearing fur.

{¶ 3} After the incident, Lowell was held on a three-day psychological hold that was subsequently extended to 30 days.  A detective followed up with Mother and learned that Lowell had pulled the hair of a woman wearing fur at a church the week before this incident.  The detective confirmed that there was a police report with the Bainbridge Township Police Department documenting that occurrence.  The detective also learned that Lowell had previously been charged by the Federal Bureau of Investigation for solicitation for murder, based on allegations that Lowell

attempted to hire someone on Facebook to murder an individual who had ties to/or wore fur.[1]

{¶ 4} On January 18, 2019, Lowell was indicted on one count of felonious assault. Over the next several months, Lowell was evaluated for competency and sanity. It was ultimately determined that Lowell was competent to stand trial but insane at the time of the crime.

{¶ 5} On October 17, 2019, Lowell filed a written plea of not guilty by reason of insanity. On November 20, 2019, Lowell filed a voluntary waiver of a jury trial. That same day a bench trial was held. During the trial, the parties stipulated to the sanity evaluation and submitted statements and exhibits to the court. The trial court found Lowell not guilty by reason of insanity. The court also found that there was probable cause to believe that Lowell was a mentally ill person subject to court order pursuant to R.C. 2945.40(A). Lowell was ordered to the court psychiatric clinic for further evaluation, and the case was continued to December 2, 2019. Lowell, who was out on bond during the pendency of the case, was allowed to return home until the next hearing.

**November 20, 2019 Incident**

{¶ 6} On November 20, 2019, after leaving court, Lowell went to Fairmont Presbyterian Church in Cleveland Heights, where she encountered a woman, A.Z., who was wearing boots lined with fur. Lowell attacked A.Z. with a knife, stabbing

---

[1] The record reflects that Lowell was found incompetent to stand trial on that charge.

her twice in the left arm and once in the abdomen. At the time, A.Z. was babysitting some children, who were waiting for choir practice to start. According to witnesses, Lowell approached A.Z. from behind and appeared to punch her several times, then walked off. It was not until afterward that witnesses realized that A.Z. had been stabbed. A member of the church tackled Lowell, wrestled her to the ground, and forcibly removed the knife from Lowell's hand. Lowell was taken into custody and on November 25, 2019, she was indicted on charges of attempted murder, felonious assault, two counts of aggravated burglary, and burglary.

{¶ 7} On December 6, 2019, Lowell was arraigned, and bond was set at $250,000. On December 9, 2019, Lowell filed a written plea of not guilty by reason of insanity. Lowell subsequently requested psychological evaluations of her competence and sanity at the time of the crime. As before, those reports came back indicating Lowell was competent to stand trial but insane at the time of the crime.

{¶ 8} On February 25, 2020, Lowell filed a voluntary waiver of jury trial in the new case. A bench trial was held at which time the parties again submitted exhibits, stipulated to the competency and sanity evaluations, and gave statements of fact to the court. Lowell was found not guilty by reason of insanity on the new charges and the court again found there was probable cause to believe Lowell was a mentally ill person subject to court order under R.C. 2945.40(A). The case was continued for a civil commitment hearing.

## March 16, 2020 Commitment Hearing

{¶ 9} At the civil commitment hearing, the court indicated that it had received a report from the psychiatric clinic evaluating Lowell and incorporated that report into its findings. The trial court found that there was clear and convincing evidence that Lowell was a mentally ill person "subject to hospitalization/institutionalization." The trial court further noted that under the first indictment the maximum term of commitment would be eight years and that under the second indictment the maximum term of commitment would be eleven years. The court indicated that it would run those terms consecutively, noting:

> Court: [W]hat the question is, is whether the maximum length of time is on one file, eleven years, or whether the Court has the authority to run consecutive sentences, one after the other. There is no real guidance in the law. So, when I tell you that the lawyer is appealing it, he is not appealing the eleven years. He's appealing do I have the authority. And to be honest with you, I hope he appeals it because I don't have a decision and nor does the State of Ohio, so it's unknown territory.

Lowell now appeals the consecutive terms of civil commitment imposed by the trial court and assigns the following error for our review:

## Assignment of Error
The trial court erred as a matter of law when it imposed "consecutive" terms of civil commitment in violation of §2945.401(J)(1) as well as Ohio law.

## Standard of Review

{¶ 10} The standard of review for questions of statutory interpretation is de novo. *Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, 122 N.E.3d 92, ¶ 15. The primary goal in construing a statute "'is to ascertain and give effect to the

intent of the legislature as expressed in the statute.'" *State v. Parker*, 8th Dist. Cuyahoga No. 105361, 2018-Ohio-579, ¶ 24, quoting *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 30. "To determine the intent of the legislature, we first look to the plain language of the statute." *Yoby v. Cleveland*, 2020-Ohio-3366, 155 N.E.3d 258, ¶ 20 (8th Dist.), citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997). "When a statute is plain and unambiguous, we apply the statute as written and no further interpretation is necessary." *Wayt* at ¶ 15, citing *Portage Cty. Bd. Of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52.

### Underpinnings of the Treatment of Mentally Ill in the Courts

{¶ 11} This appeal requires an examination of the civil commitment process and its associated statutes as applied in criminal cases. To provide understanding and context, it is important to review the constitutional history of civil commitment and the decisions that have delineated the treatment of those who are mentally ill. The applicable statutes are designed to ensure that the state's civil commitment procedure meets constitutional requirements. Consequently, it was error for the trial court to impose consecutive periods of commitment. Furthermore, consecutive civil commitments bear no relationship to the purpose of commitment, which is to treat the patient until either no longer mentally ill or no longer a danger to the public.

{¶ 12} "[T]he insanity defense goes to the very root of our criminal justice system and is founded on the broader principle that an insane person may not be

held criminally responsible for his conduct." *State v. Curry*, 45 Ohio St.3d 109, 112, 543 N.E.2d 1228 (1989). "[O]ne, who does not know that his action is wrong * * * is not a proper subject for punishment." *Id.*, citing *State v. Staten*, 18 Ohio St.2d 13, 20, 247 N.E.2d 293 (1969), superseded by statute.[2] While a finding of not guilty by reason of insanity is an acknowledgment that an insanity acquittee[3] cannot be held criminally liable for their actions, it is not, typically, followed by release but by civil commitment to a mental health facility for treatment. Unlike criminal defendants who are confined for punishment, insanity aquittees are confined for treatment and safety.

{¶ 13} Civil commitment, in general, has a long history. In the past, those who were mentally ill, but incapable of taking care of themselves, were warehoused in a jail or a hospital, with little to no treatment at either.[4] Ultimately, the Supreme Court began to define the state's ability to civilly commit mentally ill persons as well

---

[2] Under *Staten*, the court defined an insane person as "one who does not know that his action is wrong or does not have the capacity to avoid such action * * *." *Id.* at 20. In 1990, however, the state moved away from the volitional aspect of that test, codifying R.C. 2901.01(A)(14) which defines insanity as an affirmative defense that requires proof by a preponderance of the evidence, that the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's act.

[3] Because someone found "not guilty by reason of insanity" falls into a specific legal category, we use the term "insanity acquittee" to describe them. As the court noted in *Staten,* the defense of insanity "does not encompass all the mental abnormalities which medical science recognizes as encompassed within the term insanity." *Staten* at 18. We use "insanity acquittee" to distinguish someone who is not responsible for a criminal act from someone deemed clinically insane, who nevertheless would not be insane in a criminal case.

[4] *See* Megan Testa and Sara G. West, *Civil Commitment in the United States.* Psychiatry (Edgmont) 2010 Oct; 7(10):30-40. PMID: 22778709; PMCID: PMC3392176 for a psychiatric perspective on civil commitment.

as the rights of mentally ill persons when facing civil commitment. The court noted that "[a] finding of 'mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement." *O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). "[T]he mere presence of mental illness does not disqualify a person from preferring his home to the comforts of an institution." *Id.* In so saying, the court found that the state has no legitimate constitutional interest in confining a nondangerous individual capable of surviving on his own or with the help of others. *Id. See In re Burton*, 11 Ohio St.3d 147, 150, 464 N.E.2d 530 (1984).

{¶ 14} The Supreme Court established that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), *Burton* at *id.* This is true whether the commitment is designated civil or criminal. *Specht v. Patterson*, 386 U.S. 605, 608, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); citing *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1996). The court further noted that:

> [t]he state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.

*Addington* at 426.

{¶ 15} However, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual

is committed." *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

{¶ 16} When a person is found not guilty by reason of insanity, that person is presumed presently mentally ill and dangerous. *Jones v. United States*, 463 U.S. 354, 363-366, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). A finding of not guilty by reason of insanity is "sufficient foundation for commitment of an insanity acquittee for the purposes of treatment and the protection of society." *Id.* at 366. The purpose of committing an insanity acquittee:

> * * * is to treat and, if possible, to rehabilitate the person. The state incurs a responsibility to provide such care as is reasonably calculated to achieve the patient's sanity or to improve his mental condition. Therefore * * * there must be a bona fide effort to provide a meaningful amount of some appropriate form of treatment.

*In re Burton*, 11 Ohio St.3d 147, 152, 464 N.E.2d 530 (1984).

{¶ 17} Further, an insanity acquittee may only be held as long as they are mentally ill or dangerous. *Foucha v. Louisiana*, 504 U.S. 71, 76, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), citing *Jones* at 368. "[T]he Constitution permits the Government, on the basis of the insanity judgment, to confine [an insanity acquittee] to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." *Id.* at 77 at *id.* at 368, 370. When an insanity acquittee is no longer mentally ill or a danger to the public, "he is entitled to constitutionally adequate procedures to establish the grounds for his confinement." *Id.* at 79.

{¶ 18} An insanity acquittee's commitment is based solely on their status, not on a specific length of commitment. By its very nature, a civil commitment could last indefinitely if the insanity acquittee remains mentally ill or dangerous. Consequently, the imposition of consecutive commitment is not required to achieve protection of the public.

## Law and Analysis

{¶ 19} The parties have focused on the interpretation of R.C. 2945.401(J) which states, in pertinent part:

> (1) A * * * person who has been committed pursuant to * * * 2945.40 of the Revised Code continues to be under the jurisdiction of the trial court until the final termination of the commitment. For purposes of division (J) of this section, the final termination of a commitment occurs upon the earlier of one of the following:

> (a) The * * * person no longer is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order, as determined by the trial court;

> (b) The expiration of the maximum prison term or term of imprisonment that the * * * person could have received if the * * * person had been convicted of the most serious offense with which the * * * person is charged or in relation to which the * * * was found not guilty by reason of insanity;

{¶ 20} In the instant case, both the state and Lowell argue that R.C. 2945.401(J) is unambiguous, however, they come to different conclusions as to its meaning. Lowell argues that under R.C. 2945.401(J)(1)(b), the maximum term of commitment is 11 years. The state argues that because there are two separate findings of not guilty by reason of insanity, in this case, the trial court's order does not violate R.C. 2945.401(J)(1)(b).

{¶ 21} However, we find R.C. 2945.401(J)(1)(b) is designed to provide a final point of review of the trial court's jurisdiction should the insanity acquittee remain in civil commitment at that time.

{¶ 22} Shortly after R.C. 2945.401 was enacted, an insanity acquittee, who had been committed longer than his maximum possible prison term, challenged the jurisdiction of the trial court to continue his commitment. In finding that the trial court no longer had jurisdiction to continue his commitment, the Supreme Court noted:

> Prior to the enactment of R.C. 2945.401 * * * [a] defendant who was found not guilty by reason of insanity and committed to a psychiatric hospital remained indefinitely subject to the jurisdiction of the trial court to order continued periodic recommitments.

*State v. Hawkins*, 87 Ohio St.3d 311, 312, 720 N.E.2d 521 (1999).

{¶ 23} Thus, R.C. 2945.401(J) is jurisdictional and does not set the term of the insanity acquittee's commitment. An insanity acquittee "continues to be under the jurisdiction of the trial court until the final termination of the commitment." R.C. 2945.401(J)(1). Further, final termination occurs on the earlier of one of two dates as defined under R.C. 2945.401(J)(1)(a) and (b). Under R.C. 2945.401(J)(1)(a) termination occurs if the insanity acquittee is no longer a mentally ill person subject to court order. A mentally ill person subject to court order is someone who, because of their mental illness:

> (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of

violent behavior and serious physical harm, or other evidence of present dangerousness;

      (4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person;

R.C. 5122.01(B)(2) and (4).[5]

{¶ 24} To determine whether the insanity acquittee remains a mentally ill person subject to court order, periodic evaluations are required. Beginning six months from the date of commitment, the department of mental health and addiction ("MHA") submits reports to the trial court every two years indicating whether the insanity acquittee remains a mentally ill person subject to court order. After every such report, the trial court must hold a hearing to determine the continued commitment of the insanity acquittee or approve any change in the conditions of commitment. If MHA recommends termination of the commitment, R.C. 2945.401(D) defines the process necessary to terminate the commitment.

{¶ 25} Where previously these periodic hearings could occur indefinitely, under R.C. 2945.401(J)(1)(b) the trial court's jurisdiction terminates at the end of the maximum prison term the insanity acquittee could have been sentenced to for the most serious crime they were found not guilty by reason of insanity. R.C. 2945.401(J)(1)(b) is the outside limit that the trial court retains jurisdiction. If the

---

[5] R.C. 5122.01(B) also includes those who are suicidal, as well as those whose mental illness prevents them from being able to care for themselves, as well as other terms, however, because those sections are not directly relevant to this appeal, we do not include them.

insanity acquittee has not been terminated pursuant to R.C. 2945.401(J)(1)(a), and therefore remains a mentally ill person subject to court order at the end of their maximum term, the trial court or prosecutor may file for civil commitment under Chapters 5122 or 5123 of the Ohio Revised Code, thereby transferring jurisdiction of the case to the probate court. R.C. 2945.401(A); *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 18.

{¶ 26} R.C. 2945.401 "merely provides the procedural and jurisdictional bases upon which determinations of continued commitment are to be conducted * * *." *State v. Hawkins*, 9th Dist. Summit No. 18765, 1998 Ohio App. LEXIS 4391 (Sept. 23, 1988), at 7, *aff'd*, 87 Ohio St.3d 311, 720 N.E.2d 521 (1999).

{¶ 27} Further, R.C. 2945.401 is prospective. It governs the court's conduct after commitment. R.C. 2945.40 defines the court's authority to commit the insanity acquittee. R.C. 2945.40(A) states in pertinent part:

> If a person is found not guilty by reason of insanity * * * the trial court shall conduct a full hearing to determine whether the person is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order.

{¶ 28} Once the trial court finds that a person is a "mentally ill person subject to court order," R.C. 2945.40(F) states that the trial court:

> * * * shall commit the person either to the department of mental health and addiction services for treatment in a hospital, facility, or agency as determined clinically appropriate by the department of mental health and addiction services or to another medical or psychiatric facility, as appropriate.

{¶ 29} R.C. 2945.40(F) comes into play right after a finding of not guilty by reason of insanity. It empowers the trial court to commit the insanity acquittee,

however, it does not allow the court to set the equivalent of a sentence. This is necessarily the case, because the insanity acquittee's commitment is solely based upon whether they remain a mentally ill person subject to court order. R.C. 2945.401. Commitment is terminated once they no longer fit that definition. R.C. 2945.401(J). Had the General Assembly intended to authorize trial courts to impose a specific length of commitment or, as in this case, impose consecutive commitments, it could have included that language. We will not add words to a statute by "judicial fiat" that the General Assembly could have included but chose not to add. *Gabbard v. Madison Local School Dist. Bd. of Edn.*, Slip Opinion No. 2021-Ohio-2067, ¶ 19, citing *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 26.

{¶ 30} In summary, the length of jurisdiction is determined by the mental condition of the insanity acquittee and the risk he or she poses to others. R.C. 2945.40 allows the trial court to commit a person once they are found to be a mentally ill person subject to court order. Under R.C. 2945.401(J), the trial court retains jurisdiction until either the insanity acquittee is no longer a mentally ill person subject to court order or the expiration of the maximum prison term for their most serious offense, whichever comes first. Afterwards, the trial court or the prosecutor may initiate transfer of the civil commitment to the probate court.

{¶ 31} The state suggests that because there were two findings of not guilty by reason of insanity, the trial court's order was permitted by R.C. 2945.401(J)(1)(b). We disagree. The fact that there are two findings of not guilty by reason of insanity

here is irrelevant. Nothing in R.C. 2945.40 or 2945.401 gives the trial court authority to order consecutive periods of commitment. In the instant case, where there are two separate incidents that form the basis of the trial court's order, R.C. 2945.40 authorizes the court to conduct a hearing as to each case and to commit the person for each incident. However, the effect of the commitment orders is the same: commitment until the person is no longer mentally ill or a danger to others.

## Application of Criminal Sentencing Statutes to Insanity Acquittees

{¶ 32} Consecutive commitments are not permitted by the statute. However, as the trial court used the term "consecutive sentences," we now examine whether R.C. 2929.14(C)(4), the consecutive sentencing statute, applies to an insanity acquittee committed under R.C. 2945.40. Preliminarily, we note there is a clear distinction between the treatment of convicted defendants and insanity acquittees. Imposition of consecutive sentences occurs when a convicted person's behavior is deemed severe. R.C. 2929.14(C). There is a recognition that a sane person understands the nature of their conduct and therefore it is appropriate to review a sane person's behavior for punishment because of that knowledge. *State v. Swiger*, 9th Dist. Summit No. 26556, 2013-Ohio-3519, ¶ 13; referencing R.C. 2901.01(A)(14). In contrast, to penalize, as opposed to treat a person with mental illness criminalizes mental illness. The civil commitment process, although not perfect, is designed to prevent the criminalization of mental illness. To apply consecutive sentencing language and standards eliminates the distinction, created

by the legislature, between the adjudication of sane and insane individuals. Yes, the government has a duty to protect society from individuals who create a risk of harm to persons. However, the government has made the clear distinction how the protection is secured. Insanity acquittees are governed by R.C. 2945.401. Application of a criminal statute to a civil process erroneously eliminates the distinction.

{¶ 33} Moreover, courts have consistently rejected attempts to apply criminal statutes to persons acquitted by reason of insanity. In *State v. Tuomola*, 104 Ohio St.3d 93, 2004-Ohio-6239, 818 N.E.2d 272, the trial court found Tuomola not guilty by reason of insanity. The court noted that under the authority of R.C. 2945.401(J) it retained jurisdiction of Tuomola for the maximum term he could be sentenced, in his case, eighteen months from the date he was committed. *Id.* at ¶ 4. Tuomola appealed arguing that he was entitled to credit for the time he served in jail prior to his commitment pursuant to R.C. 2967.191. The court of appeals agreed. However, the Supreme Court found that R.C. 2967.191 only applies to those convicted of an offense and thus did not apply to an insanity acquittee. *Id.* at ¶ 32.

{¶ 34} The court further noted:

> [R.C.] 2945.40(F) authorizes the trial court to "commit the person to a *hospital* operated by the department of mental health." Rather than being "sentenced," therefore, a defendant who is found [not] guilty by reason of insanity is *committed*; and rather than being a "prisoner" who receives a "prison term," such a defendant is a *patient* who is committed to a *hospital.* Thus, the language that surrounds the word "conviction" in R.C. 2967.191 removes any doubt that the statute does not apply to a defendant who is found not guilty by reason of insanity.

(Emphasis sic.) *Id.* at ¶ 15.[6]

{¶ 35} In our recent decision in *State v. Young,* 8th Dist. Cuyahoga No. 108868, 2021-Ohio-215, the distinction between sentence and commitment was maintained. There, we considered the state of Ohio's argument that the maximum sentence under R.C. 2945.401(J)(1)(b) should include the indefinite term required under R.C. 2967.271.

{¶ 36} Young was found not guilty by reason of insanity for two counts of aggravated burglary. Under R.C. 2967.271, his maximum term was 11 years plus 50 percent for a maximum possible term of 16 ½ years. The trial court held that R.C. 2967.271 did not apply, thus the maximum term was 11 years. The state did not object to the trial court's calculation, however, it later appealed the decision. The state argued that the "sentence" was void and that Young's term of commitment should have been 16 ½ years. Finding that Young's commitment was civil in nature, we rejected the state's contention that a civil commitment was the same as a criminal sentence. *Id* at ¶ 12.

{¶ 37} Similarly, R.C. 2929.14(C)(4), which governs consecutive sentences, does not apply to an insanity acquittee's term of commitment. R.C. 2929.14(C)(4) allows consecutive sentences:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the

---

[6] However, see, Justice Pfeifer's dissent — *State v. Tuomala*, 104 Ohio St.3d 93, 2004-Ohio-6239, 818 N.E.2d 272, ¶ 34 (arguing maximum prison term person could have served in R.C. 2945.401(J)(1)(b) would necessarily include jail-time credit.

consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 38} By statute, an "offender" means "a person who, in this state, is convicted of or pleads guilty to a felony or a misdemeanor." R.C. 2929.01(Z). "Prison" means "a residential facility used for the confinement of convicted felony offenders that is under the control of the department of rehabilitation and correction and includes a violation sanction center operated under authority of section 2967.141 of the Revised Code." R.C. 2929.01(AA). Finally, a "prison term" includes a stated prison term or a term in a prison shortened by court or pursuant to specific statutes. R.C. 2929.01(BB). We never reach the factors in R.C. 2929.14(C)(4)(a) through (c), because an insanity acquittee is not an "offender" who was convicted of multiple "prison terms." Therefore, R.C. 2929.14(C)(4), by its unambiguous terms

does not apply to a person committed to a hospital as a mentally ill person subject to court order.[7]

{¶ 39} If the legislature had intended to apply R.C. 2929.14(C)(4) to persons found not guilty by reason of insanity, it could have included that language in the statute or expanded the definition of "offender" to include those persons. An example is provided in R.C. 2921.34, the escape statute. The legislature determined that escape is a felony of the fifth degree when:

> The person was found not guilty by reason of insanity, and the person's detention consisted of hospitalization, institutionalization, or confinement in a facility under an order made pursuant to or under authority of section 2945.40, 2945.401, or 2945.402 of the Revised Code.

{¶ 40} Had the legislature intended for "maximum prison term" as used in R.C. 2945.401(J)(1)(b) to include consecutive sentences under R.C. 2929.14(C)(4), it would have included that language.

{¶ 41} Consequently, we find that "maximum prison term" in 2945.401(J)(1)(b) that describes the final termination of the trial court's jurisdiction in an insanity acquittee's civil commitment does not include consecutive sentences as defined in R.C. 2929.14(C)(4).

---

[7] We are mindful that in a case like this, where the insanity acquittee has displayed multiple instances of violent conduct, the trial court has a legitimate concern for her propensity for violence and her release into the community. However, as we have illustrated, civil commitment of an insanity acquittee is designed to last until she is no longer mentally ill or no longer a danger to the public.

## Conclusion

**{¶ 42}** The trial court did not have authority to impose consecutive commitments.  Lowell should remain committed until such time as she is no longer mentally ill or a danger to others.  The statutes that provide for civil commitment provide for periodic review of her status and ensure that her continued commitment is supported by both medical and legal authorities. Therefore, consecutive commitments are not permitted nor warranted by statute.  Finally, the trial court retains jurisdiction on the first case up to eight years and on the second case up to 11 years, provided Lowell remains mentally ill or a danger to others.  If she remains mentally ill or a danger to others, the trial court may then transfer jurisdiction to probate court for continued commitment pursuant to the applicable statutes.  We, therefore, sustain Lowell's assignment of error.

**{¶ 43}**  Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J, and
EILEEN A. GALLAGHER, J., CONCUR