[Cite as *State v. Davis*, 2024-Ohio-1174.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                    Court of Appeals No. S-22-030

    Appellee                                  Trial Court No.  22 CR 18

v.

Tiffany L. Davis                                 **DECISION AND JUDGMENT**

    Appellant                                 Decided:   March 28, 2024

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a December 20, 2022 judgment of the Sandusky County Court of Common Pleas, sentencing appellant to a three-year term of incarceration following appellant's conviction on three counts of violation of a protection order, in violation of R.C. 2919.27(A)(2), felonies of the fifth degree.  For the reasons set forth more fully below, this court affirms the judgment of the trial court.

**{¶ 2}** Appellant, Tiffany Davis ("Tiffany"), sets forth the following sole assignment of error:

"I. The trial court erred in imposing consecutive sentences."

**{¶ 3}** The following undisputed facts are relevant to this appeal. This case arises from events occurring following the end of a relationship between Tiffany Davis ("appellant") and the victim ("A.H."). The two cohabitated during the course of their relationship at a residence in Clyde, Ohio.

**{¶ 4}** After the relationship ended, A.H. relocated to a different region of Ohio, subsequently married, and she now has a child. Conversely, appellant became fixated in a determination to resume the relationship with A.H. Appellant remained undeterred despite A.H. unequivocally communicating that the relationship was over and the resumption of it was not a possibility.

**{¶ 5}** Faced with prolific, unwelcome, amorous communications from appellant, persisting for years after the relationship ended, A.H. ultimately obtained a protection order against appellant, with A.H. and her family members named as the protected persons. Unfortunately, the protection order proved ineffective in bringing closure to the matter. Appellant continued the communications, and broadened her stated intentions, now conveying a goal of marrying A.H.

**{¶ 6}** The record reflects that no course of action undertaken in response to this situation has been effective in convincing appellant to desist, including police reports,

2.

protection orders, and serving prison terms for past offenses committed in connection to this situation.

{¶ 7} The record reflects that appellant has continued attempting to communicate with A.H. from prison during the pendency of the instant case, going so far as to write letters substantively intended for A.H., but surreptitiously addressed to A.H.'s dog, in the misguided hope that this would preclude criminal culpability. The record likewise reflects that appellant continues conveying to her legal counsel, to probation department personnel, and to the trial court, her intention of marrying A.H. upon release from prison. Appellant stated, "I would like for [A.H.] and I to get married once all this legal stuff is taken care of."

{¶ 8} On January 7, 2022, in response to appellant sending multiple communications in November and December of 2021 to A.H. and A.H.'s family members, in direct violation of the protection order, appellant was indicted on four counts of violation of a protection order, in violation of R.C. 2919.27(A)(2), felonies of the fifth degree.

{¶ 9} On January 2, 2022, appellant was released on bond, placed on GPS monitoring, and bond conditions were set expressly banning appellant from communicating with A.H. or A.H.'s family members. On January 31, 2022, appellee filed a motion for bond revocation and the issuance of a capias given appellant's renewed communications with them, in direct violation of the bond conditions.

3.

{¶ 10} On February 8, 2022, appellant entered a plea of not guilty by reason of insanity. In response, the trial court ordered that a mental health evaluation of appellant be conducted by the Court Diagnostic & Treatment Center. In addition, appellant's attorney motioned the trial court for a second, independent mental health evaluation of appellant. The trial court granted the motion, and a second evaluation was ordered to be conducted by Central Behavioral Healthcare.

{¶ 11} Both evaluations diagnosed appellant with erotomania, the belief that someone is in love with you, despite all evidence to the contrary. Notably, both evaluations simultaneously determined appellant to be legally competent, and both noted appellant, a former nurse, to be an intelligent and articulate person who understood the consequences of her actions. The Court Diagnostic & Treatment Center assessment concluded, "Despite her apparent delusion that her alleged victim loves her, [appellant] is capable of assisting counsel in preparing a legal defense." Central Behavioral Healthcare's assessment concluded, "[Appellant] did know the wrongfulness of the acts charged."

{¶ 12} On September 1, 2022, the trial court conducted a competency hearing to review the two mental health evaluations. The trial court noted that both evaluations found appellant to be legally competent. The reports were stipulated to by the parties, and admitted into evidence. Given this scenario, with appellant's authorization, appellant's previous plea of not guilty by reason of insanity was withdrawn.

4.

{¶ 13} On October 20, 2022, the trial court conducted a change of plea hearing. In a negotiated resolution of these cases, appellant voluntarily pled guilty to three of the four pending protection order violations. In exchange, the fourth offense was dismissed and, in addition, appellee agreed to not pursue additional protection order violation charges against appellant for the multiple offenses that occurred during the pendency of this case. A presentence investigation was ordered.

{¶ 14} On December 16, 2022, the sentencing hearing was conducted. The trial court heard at sentencing the great lengths that appellant undertook to locate A.H., following A.H.'s relocation outside of the area. Appellant went to the home in Clyde Ohio that the parties had once shared and spoke to the new residents in pursuit of information on A.H.'s current whereabouts. The trial court heard of the various protection order violations that appellant committed while incarcerated in the instant case, including sending letters to A.H.'s dog, soliciting other inmates to send correspondence to A.H., and soliciting other inmates to make phone calls from the jail to A.H. on appellant's behalf.

{¶ 15} The trial court next noted that appellant was on probation for similar, prior offenses at the time the instant offenses were committed. The trial court found that the prior relationship between the parties facilitated these offenses. The victim's advocate then read a victim impact statement to the trial court. It noted that appellant had been committing these offenses over a lengthy time period, ranging from December of 2018 to the present. The statement detailed the emotional trauma experienced by A.H. and her

5.

family members as a result of this situation. The statement described the considerable financial expense incurred by A.H. in equipping her new home with video surveillance, in order to secure the evidence of appellant physically trespassing upon her property in violation of the protection orders. The statement further noted appellant's single-minded conduct in obtaining digital photographs of A.H. from social media sites and creating a Facebook page, designed to fabricate the appearance that the parties remained in a relationship.

{¶ 16} A.H.'s victim impact statement elaborated, "The hardest conversations we continually must have with our family is what new extreme measures we must take to stay safe and to try to maintain our well-being once Tiffany is released [from jail]. We are all exhausted physically and mentally. Our biggest fear is that things could escalate, and she might try to harm [one or all of us]."

{¶ 17} A.H.'s mother next testified to the court. She relayed that appellant had gone so far as to call A.H., who is a military service member, while she was deployed on active duty in Cuba. She urged appellant to discontinue making calls to A.H. in Cuba. Appellant did not do so.

{¶ 18} A.H. next testified to the court. She conveyed, "I request that you please help us stop this * * * I'm sick of seeing my family suffer * * * I constantly feel I can't protect them, and I'm asking you to help us do that."

{¶ 19} Appellant then requested to address the trial court on her own behalf. Appellant emphasized to the trial court her personal disagreement with the erotomania

6.

diagnosis in both of the mental health evaluation. Appellant also conveyed, "I'm the victim, too * * * I did a year in jail three years ago * * * that I will never get back."

{¶ 20} Upon consideration of all of the aggravating and mitigating evidence presented, the trial court sentenced appellant to a one-year term of incarceration on each of the three counts, ordered to be served consecutively, for a three-year total term of incarceration. This appeal ensued.

{¶ 21} In the sole assignment of error, appellant asserts that the trial court erred in imposing consecutive sentences in this case. We do not concur.

{¶ 22} In principle support of this appeal, appellant argues, "The trial court specifically found * * * that [appellant] did not cause or expect to cause physical harm to any person or property * * * that is the crux of the argument * * * these are not the sort of offenses which engender any great concern for public [safety]." Conspicuous by its absence, appellant offers no legal authority in support of the above-quoted proposition of law, suggesting that it is improper for a trial court to make an R.C. 2929.14(C)(4) finding that consecutive sentences are necessary to protect the public in cases where the type of harm caused is not physical harm.

{¶ 23} As recently reaffirmed by the Ohio Supreme Court, regarding the scope of appellate review of consecutive sentences, in *State v. Gwynne*, 2023-Ohio-3851, ---- N.E.3d ---, ¶ 5,

{¶ 24} The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's

7.

findings must be upheld unless those findings are clearly and convincingly not supported by the record. Here, the appellate court properly applied the standard and could not clearly and convincingly find that the record did not support the trial court's findings for consecutive sentences.

{¶ 25} In conjunction, R.C. 2953.08(G)(2) authorizes that, "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed * * * [only in cases in which] it clearly and convincingly finds either * * * That the record does not support the sentencing court's [consecutive sentence] findings * * * [or] That the sentence is otherwise contrary to law." Thus, the clear and convincing standard of appellate felony sentencing review is statutorily established in the negative, retaining appellate court deference to the trial court's consecutive-sentence-findings, as reaffirmed by, and in conformity with, the above-quoted *Gwynne* holding.

{¶ 26} As further reaffirmed in *Gwynne*, ¶ 14,

This court has defined clear and convincing evidence as that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

8.

**{¶ 27}** Based upon the forgoing, *Gywnne* mandated, at ¶ 15,

[A]n appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences * * * This language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings.

**{¶ 28}** We also consider, as held by this court in *State v. Layson*, 6th Dist. Wood Nos. WD-007 and 008, 2023-Ohio-105, ¶ 16-18,

R.C. 2929.14(C)(4) requires that the trial court make three specific findings before imposing consecutive sentences, including that: (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) finding that one of the subsection (a) (b) or (c) statutory factors of R.C. 2929.14(C)(4) applies. The Supreme Court of Ohio has held that 'in order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Otherwise, the imposition of consecutive sentences is contrary to law. *See*

9.

*Id.* Although a word for word recitation of the language of the statute is not required, a reviewing court must be able to discern that the trial court engaged in the correct analysis, and to determine that the record contains evidence to support the trial court's findings. *State v. Johnson*, 6th Dist. Sandusky No. S-20-033, 2021-Ohio-2254, ¶ 11-12, citing *Bonnell* at ¶ 29. In the course of sentencing appellant, the trial court elaborated,

The court is cognizant of the overriding purposes of felony sentencing, including the protection of the public from future crime by the defendant * * * The victims have suffered serious physical, psychological, or economic harm as a result of the offense. It's detailed in the victim's statements about the expenditures for home security, as well as the length of time that this is going on. Defendant's relationship with the victim facilitated the offense * * * The defendant did commit the offense while under a felony community control sanction while on probation or while released from custody on a bond or personal recognizance * * * Defendant does have a history of criminal convictions. Defendant has not been rehabilitated. Defendant shows no remorse.

**{¶ 29}** Based upon the above-discussed findings, the trial court sentenced appellant to a one-year term of incarceration on each of the three counts, ordered to be served consecutively, for a three-year total term of incarceration.

10.

{¶ 30} As noted above, this appeal is premised upon the trial court's R.C. 2929.14(C)(4) finding that consecutive sentences are necessary, "to protect the public." Appellant argues upon appeal that the trial court erred in that finding as appellant, "Did not cause or expect to cause physical harm to any person or property."

{¶ 31} However, as held in *Gywnne*, ¶ 24, "[W]e may not rely on our own findings of fact (or speculation)—such as a finding that criminal activity tends to reduce with age, that Gwynne's offenses were crimes of opportunity, or that mental health issues are likely involved—to second-guess the trial court's factual findings in support of consecutive sentences." Thus, the conjecture put forth by appellant in opposition to the consecutive sentences imposed in the instant case is prohibited by *Gwynne*.

{¶ 32} In further support of this appeal, appellant references this court's ruling in *State v. Sipperly*, 6th Dist. Sandusky No. S-19-053, 2020-Ohio-4609. However, upon our review of *Sipperly*, we find it to be materially distinguishable from this case.

{¶ 33} In *Sipperly*, appellant maintained that the record was not supportive of the trial court's R.C. 2929.14(C)(4)(b) finding that, "At least two of the multiple offenses were committed as part of one or more courses of conduct." This court found that the record was devoid of evidence consistent with that finding, which had been included in the sentencing entry, such that the case

11.

needed to be remanded for a resentencing hearing to rectify the discrepancy between the sentencing hearing and the sentencing entry on the course of conduct finding.

{¶ 34} By contrast, the instant case entails no challenge to the trial court's R.C. 2929.14(C)(4)(b) course of conduct finding, but rather, disputes the trial court's R.C. 2929.14(C)(4) finding that consecutive sentences were necessary to protect the public. Appellant argued upon appeal that, "The trial court specifically found, as a mitigating factor, that the defendant did not cause or expect to cause physical harm * * * This is the crux of the argument * * * These are not the sort of offenses which engender any great concern for the public * * * safety."

{¶ 35} Accordingly, the public protection sentencing challenge in this case is not substantively analogous to the course of conduct sentencing challenge in *Sipperly*. Give this material distinction, we find that *Sipperly* does not support appellant's argument upon appeal.

{¶ 36} In addition, appellant references *State v. Lowell*, 179 N.E.3d 676, 2021-Ohio-3098 (8th Dist.) in support of this appeal. *Lowell* centered upon the propriety of the imposition of consecutive periods of confinement in a psychiatric institution via the civil commitment process, which is not analogous to the R.C. 2929.14(C)(4) consecutive terms of imprisonment at issue in the instant case. Thus, *Lowell* is likewise materially distinguishable from this case and does not support appellant's argument upon appeal.

12.

{¶ 37} We have carefully reviewed and considered appellant's arguments articulated upon appeal. Any arguable merit of appellant's position is substantively contingent upon the notion that physical harm must be shown to warrant the imposition of consecutive sentences, as relates to requisite public protection findings. Ohio's felony sentencing statutory scheme establishes no such restriction.

{¶ 38} R.C. 2929.12(B)(2) establishes that, "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense: *the victim of the offense suffered serious physical*, *psychological, or economic harm as a result of the offense*." (Emphasis added). The statute does not differentiate between the categories of harm, as suggested by appellant's argument upon appeal.

{¶ 39} The sentencing transcript reflects that the trial court expressly found that, "The victims suffered serious * * * psychological or economic harm as a result of the offense. [The evidence] is detailed in the victim's statements about the expenditures for home security, as well as the length of time [five years] that [the offenses have been] going on."

{¶ 40} We have carefully reviewed and considered the record of evidence. In conformity with *Bonnell* and *Johnson*, we find that it is discernible from the record of evidence that the trial court properly engaged in the requisite R.C. 2929.14(C)(4)

13.

analysis, and we further find that the record contains evidence in support of the findings. The record shows the propriety of the trial court's R.C. 2929.14(C)(4) public protection determination in support of consecutive sentencing, based upon the findings of psychological and economic harm resulting as a consequence of appellant's offenses.

{¶ 41} Based upon the forgoing, in conformity with R.C. 2953.08(G)(2) and *Gwynne*, we cannot clearly and convincingly find that the record of evidence in this case did not support the trial court's consecutive-sentence findings.

{¶ 42} Accordingly, we find appellant's assignment of error not well-taken. The judgment of the Sandusky County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.          _____

                                              JUDGE

Gene A. Zmuda, J.           

                                   _____

Myron C. Duhart, J.                                                  JUDGE
CONCUR.

                                   _____

                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.